UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KENNEATH TURNER-HARRIS,

                    Plaintiff,

v.                                                   Case No. 20-cv-1815-pp

CAPTAIN JOHNSON, JOHN DOE STAFF 1–5,
JOHN DOE UNIT SUPERVISOR #1,
JOHN DOE UNIT SUPERVISOR #2,
JOHN DOE UNIT SUPERVISOR #3
and PCT JOE JEZWINESKI,

                    Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

      Kenneath Turner-Harris, an inmate at Oshkosh Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants placed him overnight in an unclean and foul-smelling cell. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the incarcerated plaintiff must pay an initial partial filing fee. 28

1

U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On December 9, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $90.24. Dkt. No. 5. The court received that fee on January 6, 2021. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.    Screening the Complaint**

    A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

2

"accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The complaint concerns events that allegedly occurred while the plaintiff was in custody at the Wisconsin Resource Center (WRC). Dkt. No. 1 at ¶5. He has sued Captain Johnson; Joe Jezwineski; three John Doe Supervisors who worked November 28-30, 2019; and five "unknown male/female" staff members or guards. Id. at ¶¶6–9. The plaintiff alleges that all defendants are employees of WRC. Id. He sues the defendants in their individual and official capacities. Id.

The complaint alleges that on November 30, 2019, at around 9:15 p.m., the plaintiff was placed on observation status to prevent him from harming himself. Id. at ¶12. WRC staff took the plaintiff's clothes and socks and left him with only a blanket. Id. The observation cell allegedly smelled like feces and urine. Id. at ¶13. The plaintiff alleges, however, that he was "in a loss of his natural mind [and] had no bearings on to act properly or normal." Id. Once the plaintiff "c[a]me to his natural mind," he told a John Doe staff member about the odor. Id. The plaintiff alleges that "[n]othing was done," and the staff member did not have him moved to another cell. Id. The plaintiff went back to sleep, and when he awoke he notified defendant Jezwineski of the smell in the observation cell. Id. Jezwineski informed the plaintiff that the previous occupant of the cell had "smeared feces over the entire cell and they had been scrubbing the cell for two or three days by hand." Id. Jezwineski also told the plaintiff that the pressure washer they use to clean cells was inoperable. Id. at ¶14. The plaintiff asked why the cell was being used when staff could not use the power washer to clean it first. Id. Jezwineski responded that "1st and 2nd shift don[']t communicate with each[]other." Id. at ¶15.

Jezwineski notified Captain Johnson about the plaintiff's complaints, and Johnson ordered the plaintiff moved to another cell "with the promise of a shower." Id. The plaintiff alleges that he was moved to a new cell but was not allowed to shower. Id. at ¶16. He says he had feces and urine on his body from the mattress in the observation cell, which was not properly cleaned and on which he had slept. Id. The plaintiff alleges that sleeping on the dirty mattress

"led plaintiff to itch and suffer severe emotional, mental and psychotic stress [which] intensified plaintiff[']s urge to want to cause serious bodily harm to himself." Id.

The plaintiff alleges that the John Doe unit supervisors on duty from November 28 to 30, 2019 knew that the pressure washer was inoperable but allowed staff to house him in the observation cell. Id. at ¶¶17–19. He alleges the November 28 and 29 unit supervisors knew that because the cell had not been cleaned with the power washer, the cell "was not usable." Id. at ¶¶17–18. He alleges that the November 28 and 29 unit supervisors nonetheless "deliberately allowed the cell to be continued to be used." Id. He says the November 30 unit supervisor knew "that the pressure washer was inoperable and placed plaintiff in the cell with feces and urine on the walls, mattress and sink." Id. He alleges that the John Doe staff members "failed to give him a shower when it was directed by a supervisor to give plaintiff a shower to wash off the feces and urin[e] from the mattress that plaintiff slept on." Id. at ¶20.

The plaintiff attached to the complaint an affidavit from James C. Koepp, who worked as a "swamper" on segregation housing unit 11 during the last week of November 2019. Dkt. No. 1-1 at 1. Koepp says that during this week, an inmate "spread feces, food and other items on the walls, floor, to[il]et and sink. He also spread his feces on his mattress and cement bunk." Id. (Although the plaintiff does not allege that this cell was the same one in which he was housed, the court can infer that the two cells are the same.) Koepp's affidavit confirms that the power washer was unavailable to clean the cell and

5

Case 2:20-cv-01815-PP   Filed 05/23/22   Page 5 of 20   Document 12

"had been broken for over a month" despite several work orders to have it fixed. Id. Koepp says he "spent several hours trying to clean" the contaminated cell, two days in a row, "but was unable to get the smell of human waste out." Id. Koepp confirms that the plaintiff was left in the cell "for several hours," during which he complained to staff about the smell "and that the[re] was still fecal matter on the mattress along with the strong odor of urine." Id. The affidavit does not indicate how long the plaintiff was in the cell but notes that the mattress was thrown out once staff moved the plaintiff to another cell. Id.

The plaintiff also attached the report reviewing his institutional complaint about the cell, but he did not attach the complaint itself. Id. at 2–8. An institutional complaint examiner reviewed the plaintiff's complaint and contacted Captain Johnson. Id. at 3. Johnson confirmed that a swamper had scrubbed the cell by hand for two days and that the cell "appeared to be in usable condition." Id. Johnson also confirmed that when the plaintiff complained about the odor and presence of human waste, Johnson ordered him moved to another cell and informed he that he could shower (acknowledging that the plaintiff disputed that fact). Id. Johnson stated that his order to move the plaintiff "was made due to [the plaintiff's] report of the condition not due to his own observation of the conditions, stating that he did not see the things that [the plaintiff] was reporting." Id. The complaint examiner also spoke with unidentified unit staff, who confirmed that "there was, in fact, fecal matter in the seams of the mattress and under the bowl of the toilet." Id. Only after staff moved the plaintiff to a clean cell did they deem

6

the observation cell "out of order" until they could use the pressure washer to clean it thoroughly. Id. The complaint examiner notes that the plaintiff was moved to the other cell at 11:15 a.m. and was able to shower two hours later, contrary to the plaintiff's allegation that he was not permitted a shower. Id. at 3–4. Because the plaintiff was housed in an unclean cell, the complaint examiner recommended affirming the complaint. Id. at 4. But the complaint examiner noted that the plaintiff's claim that staff knew the cell was unclean was unfounded—the cell had been cleaned for two days, and staff believed it was "in usable condition" when the plaintiff was housed there. Id.

The plaintiff seeks declaratory relief, attorney's fees (if counsel is appointed), $250,000 in "punitive, declaratory, and compensatory damages" and nominal damages from each defendant. Dkt. No. 1 at ¶¶22–25.

C.  Analysis

   1.  *Official Capacity Claims*

The plaintiff seeks relief against the defendants in their official capacities. Claims against a state employee in his official capacity represent another way to plead an action against the entity that the employee represents or for which he works. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). The plaintiff alleges that the defendants work for the WRC, which the Wisconsin Department of Health Services manages in partnership with the Department of Corrections. See https://www.dhs.wisconsin.gov/wrc/

index.htm. The court construes the claims against the defendants in their official capacities as having been brought against the Department of Health Services, the agency for which they work. Graham, 473 U.S. at 165–66. Because claims against a state agency are "no different from a suit against the State itself," the court construes these claims as if the plaintiff had brought them against the State of Wisconsin. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Graham, 473 U.S. at 165–66; Monell, 436 U.S. at 690 n.55). But a state is not a "person" against whom the plaintiff may recover monetary damages under §1983. Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003).

In addition to damages, the plaintiff seeks declaratory relief, which relates solely to the defendants' alleged violations of his rights in the past. See Green v. Mansour, 474 U.S. 64, 67–68 (1985). The plaintiff may sue the defendants under §1983 in their official capacities for injunctive relief, see Will, 491 U.S. at 71 n. 10 (quoting Graham, 473 U.S. at 167 n.14 (1985), and Ex Parte Young, 209 U.S. 123, 159–60 (1908)), but only if the relief sought is *prospective*—that is, if he seeks relief from future harm, Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993). The plaintiff may not use §1983 to obtain a judgment against the defendants in their official capacities if the relief he seeks is a declaration "that they violated federal law in the past." Id. Because the plaintiff's official capacity claims are against the State of Wisconsin, and neither monetary damages nor declaratory relief are

8

Case 2:20-cv-01815-PP   Filed 05/23/22   Page 8 of 20   Document 12

available against a state under §1983, the court will not allow the plaintiff to proceed on his claims against the defendants in their official capacities.

### 2. *Individual Capacity Claims*

The plaintiff's allegations challenge the conditions of his confinement. Under the Eighth Amendment, a state may not subject prisoners "to conditions of confinement amounting to cruel and unusual punishment." Giles v. Godinez, 914 F.3d 1040, 1051 (7th Cir. 2019) (citing Rhodes v. Chapman, 452 U.S. 337, 345–47 (1981)). But only "extreme deprivations" will amount to cruel and unusual conditions of confinement. Id. (citing Hudson v. McMillian, 503 U.S. 1, 9 (1992)). The court must judge the alleged conditions "in accordance with contemporary standards of decency." Id. (citing Hudson, 503 U.S. at 8, and Rhodes, 452 U.S. at 346).

An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). In the context of a conditions-of-confinement claim, a prisoner must show that he has been deprived of "'the minimal civilized measure of life's necessities.'" Wilson v. Seiter, 501 U.S. 294, 298 (1991) (quoting Rhodes, 452 U.S. at 347). The subjective component requires a prisoner to demonstrate that prison officials acted with the requisite intent, that is, that the officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 303. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not amount to cruel and unusual punishment. Farmer, 511 U.S. at 838. Nor does

9

an official's negligence only, even gross negligence, toward an inmate's risk of harm violate the Eighth Amendment. See id. at 835–36; Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001).

The plaintiff alleges that he was housed in an unclean cell that smelled of human waste and had fecal matter in the seams of the mattress and under the toilet bowl. From the complaint's allegations and attachments, the court can conclude that the plaintiff was in this cell for approximately fourteen hours—from 9:15 p.m. on November 30, 2019 until 11:15 a.m. the following morning. Dkt. No. 1 at ¶12; Dkt. No. 1-1 at 3–4. Courts have held that incarcerated persons housed in similar conditions were deprived of "the minimal civilized measure of life's necessities." See Vinning-El v. Long, 482 F.3d 923, 924 (7th Cir. 2007) (citing cases). But those cases involved an incarcerated person housed in significantly worse conditions and usually for a much longer period of time. See id. (incarcerated person housed for three to six days in a cell whose floor was flooded with water and "walls were smeared with blood and feces," and incarcerated person was not allowed "a mattress, sheets, toilet paper, towels, shoes, soap, toothpaste, or any personal property"); Isby v. Clark, 100 F.3d 502, 505–06 (7th Cir. 1996) (incarcerated person kept three separate times—for 4, 58 and 57 days—in segregation cell that allegedly was "filthy, with dried blood, feces, urine and food on the walls"); Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir. 1992) (incarcerated person forced to live in filthy cell with "inadequate plumbing, roaches, rodents, the constant smell of human waste, poor lighting, inadequate heating, unfit water to drink, dirty and unclean

10

bedding, without toilet paper, rusted out toilets, broken windows, [and] . . . drinking water contain[ing] small black worms which would eventually turn into small black flies"); Johnson v. Pelker, 891 F.2d 136, 139–40 (7th Cir. 1989) (incarcerated person held for three days in segregation cell without cleaning supplies or water and smeared with "human defecation"). The plaintiffs in these cases also alleged physical harm from being housed in the unsanitary conditions, such as nosebleeds or illness. See, *e.g.*, Marshall v. Salter, No. 07-CV-715-BBC, 2008 WL 2622860, at *5–*6 (W.D. Wis. July 1, 2008) (citing Board v. Farnham, 394 F.3d 469, 485–86 (7th Cir. 2005)) (plaintiff's allegations that odors of feces and urine in segregation unit caused him to become ill were sufficient to defeat summary judgment).

The plaintiff alleges that he was held only overnight—for about fourteen hours—in a dirty cell that smelled like human waste. He alleges that he slept on a mattress that had feces in the seams. The only physical reaction he alleges is that he became itchy. He also alleges that he became emotionally and mentally distraught and consumed with an intense urge to harm himself. Although it is a close call, the court concludes that the plaintiff being forced to sleep on a soiled mattress satisfies the objective component of an Eighth Amendment claim. See Wheeler v. Walker, 303 F. App'x 365, 368 (7th Cir. 2008) (citing DeSpain v. Uphoff, 264 F.3d 965, 974 (10th Cir. 2001) (noting that exposure to human waste "for periods as short as 36 hours" may state an Eighth Amendment claim). That leaves the question of whether the complaint's allegations satisfy the subjective component.

11

The plaintiff alleges that once he "c[a]me to his natural mind," he told a John Doe staff member about the smell, but that the staff member took no action. Dkt. No. 1 at ¶13. The plaintiff does not allege that he was aware at the time, or that he informed the John Doe staff member, that the mattress had fecal matter on it. He informed the staff member only that the cell had an unpleasant odor. An unpleasant odor alone does not present a substantial risk of serious harm to the plaintiff. See Sain v. Wood, 512 F.3d 886, 894 (7th Cir. 2008) (concluding that the plaintiff's allegations of "an unpleasant odor in a cell" did not rise to the level of an Eighth Amendment violation); Marshall, 2008 WL 2622860, at *6 (W.D. Wis. July 1, 2008) (noting that the Eighth Amendment does not prohibit "[s]ome degree of unpleasant odor" in a prison setting). Because the plaintiff did not tell the John Doe staff member about the unclean condition of the mattress and cell, the staff member was not subjectively aware of a substantial risk to the plaintiff's health from his remaining in the cell. Even if the John Doe staff member did not take any action when the plaintiff told him about the smell, the John Doe staff member's inaction did not violate the Eighth Amendment.

The plaintiff alleges that he explained the status of the cell to Jezwineski, who told the plaintiff that the cell had been cleaned for the previous two days without use of the power washer. The plaintiff does not suggest that Jezwineski was aware of the remaining fecal matter on the mattress or toilet. His allegations instead suggest Jezwineski, like Captain Johnson, believed the two- or three-day cleaning had been sufficient to allow the use of the cell for

12

housing. That Jezwineski was wrong about that assumption does not mean he was deliberately indifferent to the condition of the cell. At most, he was negligent in failing to examine the cell more closely to determine whether it was safe for human habitation. But negligence—even gross negligence—does not violate the Eighth Amendment.

The same goes for the allegations against Captain Johnson. The plaintiff does not allege that Johnson was aware of the fecal matter remaining in the cell. In fact, Johnson told the institutional complaint examiner that he believed the cell was in usable condition. The plaintiff alleges that when Jezwineski told Johnson about the plaintiff's complaints, Johnson immediately ordered that the plaintiff be moved to a new cell. Staff moved Johnson to a new cell but according to the plaintiff, did not allow him to shower. Even assuming that is true, it does not show that Johnson was deliberately indifferent to the conditions of the observation cell. Johnson provided the plaintiff with a new cell and, according to Johnson, ordered that the plaintiff be allowed a shower without even seeing the conditions of the cell. He heard the plaintiff's complaint and responded, attempting to remedy the problem. At most, it is possible that Johnson was negligent in not more thoroughly inspecting the cell to confirm that it was fit for human habitation. But as noted, that possible negligence does not render Johnson liable under the Eighth Amendment. The court will not permit the plaintiff to proceed against Captain Johnson.

The plaintiff's allegations against the three John Doe unit supervisors are a closer call. The plaintiff alleges that each unit supervisor knew that the power

13

washer was inoperable. But he alleges that each unit supervisor had different knowledge about whether the cell was habitable. He alleges that the November 28 and 29 unit supervisors knew that the cell was not usable but allowed it to be used to house "an inmate"—not the plaintiff specifically. The plaintiff was not housed in the observation cell until November 30. He says the November 30 unit supervisor left the plaintiff in the cell but does not specifically allege whether this unit supervisor knew that the cell still contained feces.

The allegations about the John Doe supervisors lack detail. The plaintiff has not alleged that any unit supervisor viewed the cell, observed the feces on the mattress and toilet bowl and nonetheless concluded the cell was fit for an inmate to be housed there. The institutional complaint examiner noted that staff had inspected the cell and concluded that it was in usable condition. Nor does the plaintiff allege how he knows that the unit supervisors (especially the two working the days before he was housed in observation) were aware that the cell was not in a usable condition. It is possible that because the plaintiff does not know the identity of the unit supervisors, the three supervisors are one and the same or only two people. But at this early stage, the court must accept the complaint's allegations as true. The complaint alleges enough to conclude that the unit supervisors knew the cell was unfit for human habitation and still allowed staff to use the cell to house an incarcerated person, who happened to be the plaintiff. These allegations are sufficient to proceed past screening on an Eighth Amendment claim against the John Doe unit supervisors. The court advises the plaintiff that to succeed on these claims, he will need to provide

14

evidence proving each unit supervisor's personal involvement in, and deliberate indifference to, his health and safety.

Finally, the plaintiff alleges that the other John Doe staff members failed to provide him a shower despite Captain Johnson's instructions to provide him one. The complaint's attachments belie these allegations and suggest that the plaintiff was able to shower as Captain Johnson had directed. But the court must accept as true the plaintiff's allegations that the unknown staff members knew that Captain Johnson ordered them to provide the plaintiff a shower but failed to do so. The court will allow the plaintiff to proceed on this claim.

Because the plaintiff has not alleged that he suffered any physical injury from being housed in the observation cell, he may not recover compensatory damages under §1983. See 42 U.S.C. §1997e(e) (limiting recovery in lawsuits brought by prisoners "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act"); Calhoun v. DeTella, 319 F.3d 936, 940 (7th Cir. 2003). The plaintiff also seeks declaratory judgment, but he no longer is housed at WRC—he has been transferred to Oshkosh Correctional Institution. Because the plaintiff has been transferred, "a declaratory judgment would not affect [the defendants'] behavior towards [the plaintiff]." Pearson v. Welborn, 471 F.3d 732, 743 (7th Cir. 2006) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 103–04 (1983), and Davis v. District of Columbia, 158 F.3d 1342, 1348 (D.C. Cir. 1998)). The plaintiff's request for declaratory relief is moot. See Bigbee v. Nalley, 482 F. Supp. 2d 1092, 1099 (W.D. Wis. 2007) (citing Robinson v. City of Chi., 868 F.2d 959,

966 n.5 (7th Cir. 1989), and Higgason v. Farley, 83 F.3d 807, 811 (7th Cir. 1996)).

The court will allow the plaintiff to proceed on Eighth Amendment claims against 1) the John Doe supervisors for knowingly allowing the plaintiff to be housed in the unclean observation cell and 2) the John Doe staff members who failed to provide a plaintiff a shower after his transfer out of the observation cell. The plaintiff may proceed on these claims against the defendants in their individual capacities only and may seek only punitive and nominal damages and attorney's fees (which at this stage are purely hypothetical—the plaintiff has not asked the court to appoint him an attorney). He may not proceed on any other claims or for any other relief.

Because the plaintiff does not know the names of the defendants he is suing, or even the number of defendants, the court will add the Director of the WRC, Sue DeHaan, as a defendant for the limited purpose of helping the plaintiff identify the names of the defendants. See Donald v. Cook Cty. Sheriff's Dep't, 95 F.3d 548, 556 (7th Cir. 1996).

Director DeHaan is not required to respond to the complaint. After Director DeHaan's attorney files an appearance in this case, the plaintiff may serve discovery upon Director DeHaan (by mailing it to her attorney at the address in the attorney's notice of appearance) to get information that will help him identify the names of the defendants he wants to sue. For example, the plaintiff may serve the director with interrogatories (written questions) under Fed. R. Civ. P. 33 or document requests under Fed. R. Civ. P. 34. Because the

16

plaintiff has not stated a claim against Director DeHaan, the plaintiff's discovery requests must be limited to information or documents that will help him learn the real name of the unknown defendants. The plaintiff may not ask Director DeHaan about any other topic, and Director DeHaan is under no obligation to respond to requests about any other topic. After the plaintiff learns the names of the defendants that he alleges violated his constitutional rights, he must file a motion with the court, asking to substitute their names for the John Doe placeholders. At that point, the court will dismiss Director DeHaan.

The plaintiff must identify the names of the John Doe defendants **within sixty days** of Director DeHaan's attorney filing an appearance. If, within sixty days of the date on which Director DeHaan's attorney files an appearance, the plaintiff does not identify the Doe defendants (or file with the court a request for more time to do so), the court will dismiss this case based on his failure to diligently pursue it. See Civil L. R. 41(c) (E.D. Wis.).

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** defendants Captain Johnson and PCT Joe Jezwineski.

The court **ORDERS** that the Clerk of Court must add WRC Director Sue DeHaan as a defendant for the limited purpose of helping the plaintiff identify the John Doe defendants.

17

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on WRC Director Sue DeHaan. The court **ORDERS** that Director DeHaan **is not required** to respond to the plaintiff's complaint; however, she must respond to the plaintiff's discovery requests as described in this order.

The court **ORDERS** the plaintiff to identify the real names of the John Doe defendants **within sixty days** of Director DeHaan's attorney filing an appearance in the case. If he does not identify the real names of the Doe defendants, or file with the court a request for more time to do so, by that deadline, the court will dismiss this case based on the plaintiff's failure to diligently pursue it.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$259.76** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Oshkosh Correctional Institution.

The court **ORDERS** that the parties may not begin discovery (other than identifying the Doe defendants) until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are in custody at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are in custody at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

THE PLAINTIFF MUST NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 23rd day of May, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**