UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KENNEATH TURNER-HARRIS,

                    Plaintiff,

v.                                       Case No. 20-cv-1815-pp

MICHAEL PRIEBE, *et al.*,

                    Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 38) AND DISMISSING CASE**

Plaintiff Kenneath Turner-Harris, who is representing himself, is proceeding under 42 U.S.C. §1983 on Eighth Amendment claims against officials at the Wisconsin Resource Center (WRC). The defendants have moved for summary judgment. Dkt. No. 38. The court will grant the motion and dismiss the case.

**I.    Facts**

    A.    <u>Procedural Background</u>

On December 9, 2020, the court received the plaintiff's complaint alleging that known and unknown defendants had left him overnight in an unclean and foul-smelling cell. Dkt. No. 1. The court screened the complaint and allowed the plaintiff to proceed on Eighth Amendment claims against John Doe supervisors in their individual capacities. Dkt. No. 12 at 14–15. The court noted that the claims "lack[ed] detail" but explained that it would allow them to proceed because at screening, "the court must accept the complaint's allegations as true." <u>Id.</u> at 14. The court found that the "complaint allege[d] enough to conclude that the unit supervisors knew the cell was unfit for

human habitation and still allowed staff to use the cell to house an incarcerated person, who happened to be the plaintiff." Id. The court "advise[d] the plaintiff that to succeed on these claims, he [would] need to provide evidence proving each unit supervisor's personal involvement in, and deliberate indifference to, his health and safety." Id. at 14–15.

The court also allowed the plaintiff to proceed on a claim that John Doe staff members "failed to provide him a shower despite Captain Johnson's instructions to provide him one." Id. at 15. The court accepted the allegations in the complaint as true and allowed this claim to proceed, even though the attachments to the complaint "belie[d] these allegations and suggest[ed] that the plaintiff was able to shower as Captain Johnson had directed." Id. The court limited the plaintiff's possible relief to punitive and nominal damages and attorney's fees (if he incurred them) because he did not allege "that he suffered any physical injury from being housed in the observation cell," and because the plaintiff's transfer to another facility mooted his claim for declaratory relief. Id. at 15–16. The court dismissed all other defendants and claims, including claims against the Doe defendants in their official capacities. Id. at 7–9, 16.

Because the plaintiff was suing unknown defendants, the court added WRC Director Sue DeHaan as a defendant for the limited purpose of helping the plaintiff identify the names of the Doe defendants. Id. at 16. The court ordered the plaintiff to identify the names of the defendants within sixty days of Director DeHaan's attorney filing an appearance. Id. at 17. The court extended that deadline after the plaintiff asked for additional time to identify the Doe defendants. Dkt. No. 17.

Then the case took a detour. On August 26, 2022, the court received the plaintiff's motion to voluntarily dismiss the case and return his filing fee. Dkt.

No. 18. A month later, on September 26, 2022, the court granted the plaintiff's request to close the case, ordered the clerk to close it and denied the plaintiff's request for a refund of his filing fee. Dkt. No. 20. Only three days later, the court received from the plaintiff a document titled "Motion to Enlarge Time and Motion to Amend Civil Rights Complaint." Dkt. No. 21. The plaintiff asked for additional time to amend his complaint to identify the Doe defendants and to withdraw his previously filed motion to withdraw because, he said, he had received bad advice to file that motion. Id. at 1–2. The court construed the motion as a motion to reopen, granted it and reopened the case. Dkt. No. 22 at 3. The court gave the plaintiff additional time to identify the Doe defendants, but denied his request to amend his complaint because it did not comply with the court's local rules. Id. at 3–4. The court ordered the plaintiff to identify the Doe defendants by December 6, 2022. Id. at 5. The court warned the plaintiff that if by that deadline he did not move to substitute the real names of the Doe defendants or explain why he could not identify them, "the court [would] dismiss the case for the plaintiff's failure to prosecute it." Id.

The December 6, 2022 deadline passed, and the plaintiff did not identify the Doe defendants or request more time to do so. On December 27, 2022, the court dismissed the case without prejudice for the plaintiff's failure to prosecute it and entered judgment. Dkt. Nos. 25, 26. Just over a week later, on January 5, 2023, the court received the plaintiff's motion to amend or alter the judgment. Dkt. No. 27. The plaintiff told the court that he had sent to Director DeHaan requests to identify the Doe defendants but did not receive a response until December 29, 2022—two days after the court dismissed the case. Id. at 1–2. The plaintiff provided the names of the defendants: Captains Michael Priebe, Nicholas Johnson and Thomas Molitor were the shift supervisors, and Chad

Gutche and David Steffens (which he spelled Steffans) were the staff members. Id. at 2. The court observed that the plaintiff's motion sought relief based on his own error, not an error of the court. Dkt. No. 28 at 4. The court nonetheless granted the plaintiff's motion, vacated the judgment and reopened the case. Id. at 5. The court substituted the defendants' names in place of the Doe placeholders, dismissed Director DeHaan and ordered service of the complaint on the defendants. Id. The court advised the plaintiff to keep the court informed of any further misunderstanding or questions he had. Id. The court also reminded him to diligently litigate his case, or the court would dismiss it a third time and would not again reopen it. Id. at 5–6.

The case proceeded without further mishaps, and on April 4, 2023, the court entered a scheduling order setting deadlines for the parties to complete discovery and file dispositive motions. At the October 5, 2023 deadline for dispositive motions, the court received the defendants' motion for summary judgment. Dkt. No. 38. The court ordered the plaintiff to file his response materials by November 6, 2023, and later granted the plaintiff's motion to extend that deadline to November 20, 2023. Dkt. Nos. 47, 49. The court received the plaintiff's response materials on November 22, 2023. Dkt. Nos. 51–53. The defendants filed their reply brief, dkt. no. 54, so their motion for summary judgment is fully briefed and ready for the court's decision.

B. Factual Background

The plaintiff did not respond to the defendants' proposed facts, as the court advised him to do and as required by the court's Local Rules. Dkt. No. 47; see Civil Local Rule 56(b)(2)(B) (E.D. Wis.). Because the plaintiff failed to respond to the defendants' proposed facts as the local rules require, the court deems the defendants' facts admitted for purposes of this decision. See Civil

L.R. 56(b)(4); Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003) ("[A] failure to respond by the nonmovant as mandated by the local rules results in an admission."). That means the court will consider the defendants' proposed facts to be true, so long as the defendants support them by citing evidence in the record. See Federal Rule of Civil Procedure 56(e)(2).

  1.  *The Plaintiff's Complaint*

Although the plaintiff typed his complaint, he signed the complaint and "declare[d] under penalty of perjury that" its contents are "true and correct." Dkt. No. 1 at 3–4. The court treats the verified complaint as "the equivalent of an affidavit for purposes of summary judgment, because it 'contains factual allegations that if included in an affidavit or deposition would be considered evidence, and not merely assertion.'" Beal v. Beller, 847 F.3d 897, 901 (7th Cir. 2017) (quoting Ford v. Wilson, 90 F.3d 245, 246 (7th Cir. 1996)).

The court recounted the allegations of the complaint in the screening order:

> The complaint alleges that on November 30, 2019, at around 9:15 p.m., the plaintiff was placed on observation status to prevent him from harming himself. WRC staff took the plaintiff's clothes and socks and left him with only a blanket. The observation cell allegedly smelled like feces and urine. The plaintiff alleges, however, that he was "in a loss of his natural mind [and] had no bearings on to act properly or normal." Once the plaintiff "c[a]me to his natural mind," he told a John Doe staff member about the odor. The plaintiff alleges that "[n]othing was done," and the staff member did not have him moved to another cell. The plaintiff went back to sleep, and when he awoke he notified defendant Jezwineski of the smell in the observation cell. Jezwineski informed the plaintiff that the previous occupant of the cell had "smeared feces over the entire cell and they had been scrubbing the cell for two or three days by hand." Jezwineski also told the plaintiff that the pressure washer they use to clean cells was inoperable. . . .
>
> [Captain] Johnson ordered the plaintiff moved to another cell "with the promise of a shower." The plaintiff alleges that he was moved to a new cell but was not allowed to shower. He says he had

feces and urine on his body from the mattress in the observation cell, which was not properly cleaned and on which he had slept. The plaintiff alleges that sleeping on the dirty mattress "led plaintiff to itch and suffer severe emotional, mental and psychotic stress [which] intensified plaintiff[']s urge to want to cause serious bodily harm to himself."

The plaintiff alleges that the John Doe unit supervisors on duty from November 28 to 30, 2019 knew that the pressure washer [used to clean the cells] was inoperable but allowed staff to house him in the observation cell. He alleges the November 28 and 29 unit supervisors knew that because the cell had not been cleaned with the power washer, the cell "was not usable." He alleges that the November 28 and 29 unit supervisors nonetheless "deliberately allowed the cell to be continued to be used." He says the November 30 unit supervisor knew "that the pressure washer was inoperable and placed plaintiff in the cell with feces and urine on the walls, mattress and sink." He alleges that the John Doe staff members "failed to give him a shower when it was directed by a supervisor to give plaintiff a shower to wash off the feces and urin[e] from the mattress that plaintiff slept on."

Id. at 4–7 (internal citations omitted).

### 2. *The Defendants' Facts*

The plaintiff was incarcerated at the WRC during the relevant events. Dkt. No. 40 at ¶1. Defendants Nicholas Johnson, Michael Priebe and Thomas Molitor were employed as Captains at WRC; defendants Chad Gutche and David Steffens were Psychiatric Care Technicians (PCT). Id. at ¶¶2–3.

The WRC's bed assignments list from November and December 2019 shows that at 9:07 p.m. on November 30, 2019, the plaintiff was moved to observation status cell #130 on Unit F-11. Id. at ¶4; Dkt. No. 46-3 at 1. Gutche avers that unit F-11 is a secured unit used to help control incarcerated persons who are disruptive, have behavioral issues or have threatened self-harm or harm to others. Dkt. No. 44 at ¶5. Persons incarcerated on Unit F-11 are restricted to their cells. Id. A PCT checks on persons incarcerated on Unit F-11 every fifteen minutes, regardless of their status. Id.

a.      November 30, 2019

On November 30, 2019, Johnson worked as the second shift captain. Dkt. No. 40 at ¶5. Johnson oversaw all of WRC because it was a Saturday, and the director and security director do not work weekends. Id. Johnson avers that around 9:00 p.m., the plaintiff asked to be moved into observation status because he was feeling suicidal and was going to hang himself. Dkt. No. 43 at ¶5. Johnson spoke with the plaintiff a little after 9:00 p.m., and the plaintiff reiterated that he was suicidal but "'had a plan'" that he refused to tell Johnson. Id. at ¶6. Johnson decided to move the plaintiff onto observation status for his safety. Id. at ¶7. WRC staff moved the plaintiff to cell #130 on the High Management Unit (Unit F-11). Id. at ¶8; Dkt. No. 46-1 at 1. Johnson had no further interaction with the plaintiff that day. Dkt. No. 43 at ¶10.

Staff log entries from the plaintiff's time on observation show that most of the time the plaintiff was in the cell, staff noted that he was either "lying quietly," "asleep" or "appears asleep." Dkt. No. 46-1 at 3–6. Staff did not record the plaintiff complaining about the conditions in his cell. Id.

Johnson avers that he had no reason to believe that cell #130 was not clean and hygienic when he had the plaintiff moved there. Dkt. No. 43 at ¶9. He says that "inmate janitors," also known as "swampers," clean the observation cells before another incarcerated person is housed there. Id. at ¶12. He says that he "assume[s] all cells are inspected for cleanliness by a PCT after they are cleaned by an inmate janitor." Id. Johnson does not supervise the janitors and does not personally inspect cells for cleanliness before an incarcerated person is moved into the cell. Id. at ¶13.

Priebe avers that on November 30, 2019, he worked first shift from 5:30 a.m. to 2:00 p.m. Dkt. No. 41 at ¶4. Like Johnson, Priebe oversaw the entire

institution during his shift because it was a Saturday. Id. Priebe was not involved in the decision to move the plaintiff onto observation status, did not order the plaintiff moved there and did not have any reason to know or expect that the plaintiff (or any other incarcerated person) would be placed in cell #130 while it was in an unsanitary condition. Id. at ¶¶8–10. Priebe says that because he is a captain, he is not directly responsible for ensuring the cleanliness of the cells unless someone makes him aware of a specific unsanitary condition. Id. at ¶5. Priebe avers, as did Johnson, that he assumes PCTs inspect cells after a janitor cleans them and before another incarcerated person is moved into the cell. Id. at ¶6. He says that he does not supervise the institutional janitors or inspect cells before an incarcerated person is placed there. Id. at ¶7.

Molitor avers that on November 30, 2019, he worked third shift from 9:30 p.m. until 6:00 a.m. Dkt. No. 42 at ¶4. Like the other captains, he oversaw the entire institution during his shift. Id. He echoes Priebe's statements that because he is a captain, he is not directly responsible for ensuring the cleanliness of the cells and assumes that PCTs inspect cells after a janitor cleans them and before another incarcerated person is moved there. Id. at ¶¶5–6. Molitor says he also does not supervise institutional janitors or inspect observation cells before an incarcerated person is placed there. Id. at ¶7. Molitor says he was not involved in the decision to move the plaintiff onto observation status, did not order the plaintiff moved there while it was in an unsanitary condition and was not informed that cell #130 was in an unsanitary condition while the plaintiff was in it. Id. at ¶¶8–10.

b.     December 1, 2019

On December 1, 2019, Johnson and Priebe worked as first shift captains, beginning at 5:30 a.m. Dkt. No. 40 at ¶21. At 11:10 a.m., staff moved the plaintiff from cell #130 to cell #125. Dkt. No. 43 at ¶17; Dkt. No. 46-1 at 6. Johnson avers that he did not order staff to give the plaintiff a shower before he was moved from cell #130 to cell #125. Dkt. No. 43 at ¶14. He says the plaintiff never asked him for a shower or told him that he was dirty after staying in cell #130. Id. at ¶15. Johnson avers that staff did not need to contact him to allow the plaintiff to take a shower "because the PCS has the authority to allow an inmate to shower outside of regular shower times." Id. at ¶16.[1]

Gutche and Steffens aver that they worked third shift as PCTs from 10:15 p.m. on November 30, 2019 until 6:15 a.m. the next day. Dkt. No. 44 at ¶4; Dkt. No. 45 at ¶4. Both aver that Johnson did not direct them to allow the plaintiff to shower before they finished their shift. Dkt. No. 44 at ¶6; Dkt. No. 45 at ¶5. They state that their shifts overlapped with Johnson for only forty-five minutes. Dkt. No. 44 at ¶7; Dkt. No. 45 at ¶6. They also explain that their shift overlapped for only fifteen minutes with PCT Joe Jezwinski (whom the plaintiff referred to as "Jezwineski" in his complaint), who began his shift at 6:00 a.m. on December 1, 2019. Dkt. No. 44 at ¶8; Dkt. No. 45 at ¶7.

Gutche and Steffens aver that the plaintiff's allegations against them could not have occurred as he alleges because there would not have been enough time during their overlapping shifts for the plaintiff to ask Jezwinski for a shower, for Jezwinski to then ask Johnson for permission to allow the plaintiff to shower and for Johnson to then direct Gutche and Steffens to

---

[1] Johnson does not clarify what or who "the PCS" is, but the court infers that it may refer to Psychiatric Care Staff or Psychiatric Care Supervisor.

provide the plaintiff a shower while he was still on observation status. Dkt. No. 44 at ¶9; Dkt. No. 45 at ¶8. Gutche avers that no one directed him to give the plaintiff a shower, and that he had no reason to believe that the plaintiff needed one. Dkt. No. 44 at ¶¶10–11. He says he "was not involved with anything regarding his alleged unsanitary cell." Id. at ¶11.

Johnson avers that at 1:15 p.m., staff released the plaintiff from observation status and returned him to Unit 17, which is "the general population unit that houses maximum service inmates." Dkt. No. 43 at ¶19. Persons incarcerated on Unit 17 may shower at any time that the dayroom is open except during shift change at around 2:00 p.m. Id. All three captains aver that the plaintiff would have been able to shower after staff released him from observation and returned him to Unit 17. Id. at ¶20; Dkt. No. 41 at ¶11; Dkt. No. 42 at ¶11.

### 3. *Institutional Complaint*

The defendants attached the institutional complaint report from a complaint that the plaintiff filed on December 5, 2019. Dkt. No. 46-4. Neither party discusses this complaint report. The court will reproduce its discussion of the report from the screening order:

> Johnson confirmed that a swamper had scrubbed the cell by hand for two days and that the cell "appeared to be in usable condition." Johnson also confirmed that when the plaintiff complained about the odor and presence of human waste, Johnson ordered him moved to another cell and informed [him] that he could shower (acknowledging that the plaintiff disputed that fact). Johnson stated that his order to move the plaintiff "was made due to [the plaintiff's] report of the condition not due to his own observation of the conditions, stating that he did not see the things that [the plaintiff] was reporting." The complaint examiner also spoke with unidentified unit staff, who confirmed that "there was, in fact, fecal matter in the seams of the mattress and under the bowl of the toilet." Only after staff moved the plaintiff to a clean cell did they deem the observation cell "out of order" until they could use the pressure washer to clean

it thoroughly. The complaint examiner notes that the plaintiff was moved to the other cell at 11:15 a.m. and was able to shower two hours later, contrary to the plaintiff's allegation that he was not permitted a shower. Because the plaintiff was housed in an unclean cell, the complaint examiner recommended affirming the complaint. But the complaint examiner noted that the plaintiff's claim that staff knew the cell was unclean was unfounded—the cell had been cleaned for two days, and staff believed it was "in usable condition" when the plaintiff was housed there.

Dkt. No. 12 at 6–7 (internal citations omitted). Johnson also confirmed to the complaint examiner that the power washer had been inoperable, which is why staff had a swamper clean the cell by hand. Dkt. No. 46-4 at 2.

### 4. *Plaintiff's Declaration*

The plaintiff filed a declaration in support of his opposition to the defendants' motion for summary judgment. Dkt. No. 53. The plaintiff avers that he spoke with Johnson (he does not say what day or time) and complained "that the cell smelled and reeked of feces and that feces and blood was smeared on the mattress and walls." Id. at ¶3. He says Johnson "directed that [he] be given a shower and moved so that the cell could be cleaned." Id. After the plaintiff was moved out of the cell, "the swamper attempted to clean the cell by hand and admitted it had feces on the wall and cracks of the mattress." Id. at ¶4. The plaintiff says that the defendants "were fully aware that the power washer or pressure washer used to clean the observation cells were inoperable and as such, could not be used to clean the cells." Id. at ¶5. He says that the defendants also know "that many of the inmates placed in observation status in the cells are cutters (self-harming) and smear feces all over the cell walls and doors and matresses [*sic*] in acting out their illness." Id. at ¶6.

The plaintiff avers that when he "awakened the next day," he "immediately began complaining that the cell reeked of feces and that there was presence of fecal matter." Id. at ¶7. He notes that an "institutional complaint investigator

confirms that Johnson was in fact contacted and he had [the plaintiff] moved to another cell." Id. at ¶8. He reiterates that "the swamper attempted to clean the cell by hand and admitted the presence of fecal matter under the toilet bowl and in the cracks of the mattress." Id. The plaintiff says that he "did in fact request a shower and was informed that he would be given one." Id. at ¶9. He says he nonetheless "was not allowed to take a shower even though he had been laying [*sic*] in feces and other foreign elements." Id.

## II. Discussion

### A. Summary Judgment Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To defeat a motion for summary judgment, the non-moving party (here, the plaintiff) must provide more than assertions, allegations or denials; the plaintiff instead "needs to come forward with *evidence*" demonstrating his entitlement to relief that would be sufficient to "support a jury's verdict in [his] favor." Beatty v. Olin Corp., 693 F.3d 750, 754 (7th Cir. 2012); see Cooper v. Haw, 803 F. App'x 942, 946 (7th

Cir. 2020) (explaining that "argument alone is insufficient to avoid summary judgment").

B. Eighth Amendment

As the court explained in the screening order, the court analyzes the plaintiff's claim about the conditions of his confinement under the Eighth Amendment. Dkt. No. 12 at 9–10. Under the Eighth Amendment, the state may not subject incarcerated persons "to conditions of confinement amounting to cruel and unusual punishment." Giles v. Godinez, 914 F.3d 1040, 1051 (7th Cir. 2019) (citing Rhodes v. Chapman, 452 U.S. 337, 345–47 (1981)). But only "extreme deprivations" will amount to cruel and unusual conditions of confinement. Id. (citing Hudson v. McMillian, 503 U.S. 1, 9 (1992)). The court must judge the alleged conditions "in accordance with contemporary standards of decency." Id. (citing Hudson, 503 U.S. at 8, and Rhodes, 452 U.S. at 346).

An Eighth Amendment claim consists of objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must present evidence showing that "the challenged prison conditions . . . [were] so serious that they 'creat[ed] an excessive risk to [his] health and safety.'" Balle v. Kennedy, 73 F.4th 545, 552 (7th Cir. 2023) (quoting Thomas v. Blackard, 2 F.4th 716, 719–20 (7th Cir. 2021)). The subjective component requires the plaintiff to demonstrate that prison officials acted with "deliberate indifference" to the risk to his health or safety. Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 303. To satisfy this component, the plaintiff must present evidence demonstrating that the defendants were "'subjectively aware of' the conditions and 'intentionally disregarded' them." Balle, 73 F.4th at 552 (quoting Johnson v. Prentice, 29 F.4th 895, 904 (7th Cir. 2022), cert. denied, 144 S. Ct. 11 (2023)). "[A]n official's

failure to alleviate a significant risk that he should have perceived but did not" does not amount to cruel and unusual punishment. Farmer, 511 U.S. at 838.

C. Analysis

In the screening order, the court discussed in detail why the complaint's allegations about the unclean cell satisfy the objective component of an Eighth Amendment claim. Dkt. No. 12 at 10–11 (citing cases); see also Thomas, 2 F.4th at 720–21 (discussing Taylor v. Riojas, 592 U.S. 7, 7–8 (2020)). The court will assume for purposes of this decision that the plaintiff has satisfied the objective component given those allegations and the statements in his declaration that he was "forced to sleep on a soiled mattress." Dkt. No. 12 at 11. But there is no evidence from which a reasonable jury could conclude that any defendant was subjectively aware of the conditions in the plaintiff's cell and disregarded the risk that those conditions posed to the plaintiff's health or safety. Nor could a reasonable jury conclude that any defendant violated the plaintiff's rights by denying him a shower when he was released from the observation cell.

1. *Plaintiff's Housing in Cell #130*

It is undisputed that at about 9:00 p.m. on November 30, 2019, Johnson moved the plaintiff, who had expressed suicidal thoughts, to cell #130 for his safety. It is undisputed that neither Priebe nor Molitor had any involvement in moving the plaintiff into the observation cell. It is undisputed that at some point while the plaintiff was in the cell overnight or the next morning, he complained about the smell in cell #130. At around 11:10 a.m. on December 1, 2019, staff moved the plaintiff into a new cell because of his complaints that the cell was unclean.

All three captains aver that they had no reason to believe that cell #130 was not clean and hygienic when staff moved the plaintiff there. They all aver that a swamper cleans the observation cells between uses. They aver that they, as captains, do not supervise the swampers or inspect the cells for cleanliness after a cleaning. They assume that a PCT inspects the cell and ensures that it is clean before another person is moved into the cell.

Neither the plaintiff's declaration nor the allegations in his complaint create a genuine dispute of fact as to whether any defendant knew on November 30, 2019 that cell #130 was unsanitary. The plaintiff alleged in his complaint that Jezwinski told him that staff had been cleaning his cell by hand for a few days because the power washer used to clean cells was inoperable. In his declaration, the plaintiff insists that the defendants knew that the power washer did not work and that other incarcerated persons sometimes smear feces on the walls and mattress of the observation cell when they are held there. But these statements are irrelevant to whether any defendant knew that cell #130 was in an unsanitary state on November 30, 2019, before the plaintiff was housed there. That the power washer was not working does not necessarily mean the cell could not be properly cleaned. And the fact that incarcerated persons sometimes soil the walls and mattress of a cell does not mean someone soiled cell #130 immediately before the plaintiff was housed there. The plaintiff has no personal knowledge about the conditions of cell #130 or about what the defendants knew about the state of the cell before he was housed there. His speculation about the conditions or about what the defendants knew is not evidence and does not create a genuine dispute of fact. See Cambronero v. Meli,

No. 22-2103, 2023 WL 4946724, at *2 (7th Cir. Aug. 3, 2023) (citing Pulera v. Sarzant, 966 F.3d 540, 550–51 (7th Cir. 2020)).[2]

The plaintiff suggests that the fact that Jezwinski told him that staff had been cleaning his cell by hand because the power washer used to clean cells was inoperable should have alerted the captains that the cell was unfit for human habitation. But Jezwinski is no longer a defendant, and neither party submitted a declaration from him. That means Jezwinski's potential testimony about the staff's cleaning of cell #130 and the inoperability of the power washer is inadmissible hearsay, which the court may not consider for purposes of summary judgment. See Fed. R. Civ. P. 56(c)(4); Gunville v. Walker, 583 F.3d 979, 985 (7th Cir. 2009) ("Admissibility is the threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment.").

The complaint examiner's report includes evidence that Johnson knew the power washer was inoperable before the plaintiff was housed in cell #130. But Johnson told the complaint examiner that a swamper had spent two days "scrubbing all surfaces of this cell," and that the cell "appeared to be in usable condition" by November 30, 2019. Dkt. No. 46-4 at 2. Johnson reported that when he ordered the plaintiff moved to another cell, it was based on the

---

[2] There are discrepancies between the plaintiff's complaint and his declaration. The plaintiff avers in his declaration that he told Johnson the observation cell smelled like feces and blood and that both were smeared on the mattress and on the walls. The complaint does not allege anything about blood, does not allege that the plaintiff told Johnson that the cell smelled like blood and does not allege that anything (either blood or feces) was smeared on the walls of the cell or the mattress. Nor does the complaint allege that the plaintiff ever spoke to Johnson about the conditions of the cell. The complaint alleges only that the cell "smelled of feces and urine," "the mattress that he slept on had urine and feces on it" and the plaintiff told Jezwinski (not Johnson) about the conditions. Dkt. No. 1 at ¶¶13–14, 16.
16
Case 2:20-cv-01815-PP   Filed 03/01/24   Page 16 of 20   Document 55

plaintiff's complaints and not based on Johnson's own observations of the cell. Johnson's report to the complaint examiner bolsters his position that he believed the cell *was* clean on November 30, 2019. There also is evidence that a swamper discovered feces in the cracks or seams of the mattress and under the toilet bowl. This evidence suggests that the cell was, in fact, unsanitary and in need of further cleaning before a person was housed there. But it was only *after* staff moved the plaintiff out of cell #130 and into cell #125 that the swamper found the unclean conditions, so it is not evidence that any defendant knew about these conditions *before* moving the plaintiff into cell #130 and disregarded them.

Perhaps the captains should not have relied on their assumption that the cell was ready to house an incarcerated person. Or maybe staff should have more thoroughly checked the swamper's work to ensure that the cell was fully cleaned. But as the court explained in the screening order, any false belief or assumption that the cell was properly cleaned amounts only to negligence, which does not violate the Eighth Amendment. See Dkt. No. 12 at 12–13; Farmer, 511 U.S. at 835–36; Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001). The court initially dismissed Johnson based on this conclusion—that the plaintiff's allegations against him amounted only to a claim of negligence. Dkt. No. 12 at 13. The court added Johnson back into the case later, dkt. no. 28, but the evidence affirms the court's original conclusion that Johnson cannot be held liable for violating the plaintiff's Eighth Amendment rights.

There is no evidence that any defendant was aware before the plaintiff was moved into cell #130 that parts of the cell and the mattress were unclean. As the court explained above, a prison official cannot be held liable for failing to "alleviate a significant risk that he should have perceived but did not." Farmer, 511 U.S. at 838. There must be evidence that the defendants were "subjectively

17

Case 2:20-cv-01815-PP   Filed 03/01/24   Page 17 of 20   Document 55

aware of and intentionally disregarded an objectively serious risk to [the plaintiff's] health or safety." Johnson, 29 F.4th at 904. Because the plaintiff presented no evidence to satisfy the subjective element of his Eighth Amendment claim, the captains are entitled to judgment as a matter of law.

### 2. *Failure to Provide a Shower*

The plaintiff alleged in his complaint that after he complained about the conditions in his cell, Johnson ordered him moved to cell #125 "with the promise of a shower" that he never received. Dkt. No. 1 at ¶15. The plaintiff was returned to general population at 1:15 p.m., about two hours later. It is undisputed that incarcerated persons in general population may shower anytime that the dayroom is open except when the dayroom closes at shift change at around 2:00 p.m. All three captains aver that the plaintiff would have been able to shower when he was returned to general population.

The undisputed evidence does not support a finding that Gutche or Steffens were aware of and yet were deliberately indifferent to the plaintiff's need for a shower. Gutche and Steffens aver that on December 1, 2019, their shifts overlapped with Captain Johnson's for only forty-five minutes; Johnson's shift began at 5:30 a.m. and theirs ended at 6:15 a.m. They aver that Johnson did not direct them to allow the plaintiff a shower during that brief time. There is no evidence contradicting their statements. The complaint alleges that the plaintiff spoke with Jezwinski, who relayed the plaintiff's complaints to Johnson. Gutche and Steffens aver that Jezwinski's shift started at 6:00 a.m., so he may be the person whom Johnson allegedly told to provide the plaintiff a shower. But as the court explained above, Jezwinski is not a defendant. There is no evidence that Gutche or Steffens interacted with the plaintiff at all or that they denied him a shower that Johnson or other supervisory staff ordered them

to provide him. These defendants also are entitled to judgment on the plaintiff's Eighth Amendment claim against them.

The evidence shows that the plaintiff spent a night in a cell that was not totally clean and had to wait up to two hours to shower after that experience. Although that situation was undoubtedly unpleasant, the evidence would not allow a reasonable jury to conclude that it was unconstitutional. The court will grant the defendants' motion for judgment as a matter of law on the plaintiff's Eighth Amendment claims.[3]

## III. Conclusion

The court **GRANTS** the defendants' motion for summary judgment. Dkt. No. 38.

The court **DISMISSES** this case. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

---

[3] The defendants argued that if the court declined to grant summary judgment in their favor, they were entitled to qualified immunity. "Where a defendant 'wins on the facts, [she] does not need qualified immunity.'" Sierra-Lopez v. County, Case No. 17-cv-1222, 2019 WL 3501540, at *10 (E.D. Wis. July 31, 2019) (quoting Viero v. Bufano, 925 F. Supp. 1374, 1387 (N.D. Ill. 1996); and Antepenko v. Domrois, Case No. 17-cv-1211, 2018 WL 6065347, at *6 (E.D. Wis. Nov. 20, 2018)).

If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion in *this court*. See Fed. R. App. P. 24(a)(1). The plaintiff may be assessed a "strike" by the Court of Appeals if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 1st day of March, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**